IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DOVIE S. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:10-cv-00867 |
| | ) | Judge Nixon |
| v. | ) | Magistrate Judge Brown |
| | ) | |
| WILLSTAFF, INC., d/b/a ADVANTAGE HUMAN RESOURCING, | ) ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

Pending before the Court is Defendant Willstaff, Inc.'s Motion for Summary Judgment ("Motion"). (Doc. No. 11.) The Motion was filed with a supporting Memorandum (Doc. No. 12), a Statement of Undisputed Material Facts (Doc. No. 13), and a Declaration (Doc. No. 14). Plaintiff Dovie S. Smith filed a Response to the Motion (Doc. No. 15) along with a supporting Memorandum (Doc. No. 16), a Response to Defendant's Statement of Undisputed Material Facts (Doc. No. 17), and an additional Statement of Undisputed Facts (Doc. No. 18). Defendant subsequently filed a Reply to Plaintiff's Response (Doc. No. 19) and a Response to Plaintiff's Statement of Undisputed Facts (Doc. No. 20). Defendant's Motion is **GRANTED**.

**I. BACKGROUND**

  A. *Factual History*[1]

Plaintiff was hired as a branch manager for Defendant in September of 2008. The

---

[1] Unless otherwise noted, all facts in this section are undisputed and are taken from Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (Doc. No. 17) and Defendant's Response to Plaintiff's Statement of Undisputed Facts (Doc. No. 20).

1

decision to hire Plaintiff was made by Jill Rankin, Area Vice President; Ed Cooper, Regional Vice President; Lex Orr, Senior Vice President of Sales; and Wayne Williamson, CEO. Mr. Williamson, Ms. Rankin, and Mr. Cooper are older than Plaintiff. Plaintiff has testified that she does not know Mr. Orr's age. At the time Plaintiff was hired, Defendant operated two branch offices in the Nashville area. One was located in Madison, Tennessee, and the other was located in Antioch, Tennessee. In November of 2008, while Plaintiff was undergoing training, Mr. Cooper, Mr. Orr and Mr. Williamson offered Plaintiff the opportunity to manage both branches instead of only one. Plaintiff accepted the additional position.

In May of 2009, Mr. Cooper and Ms. Rankin informed Plaintiff of their decision to have her manage only one branch. Mr. Cooper and Ms. Rankin decided to have Plaintiff continue managing the Antioch branch because the Madison branch had an assistant manager at the time and the Antioch branch did not. The change became effective on May 18, 2009. In June of 2009, Ms. Rankin's job position changed so that she no longer supervised Plaintiff. Defendant hired Betty Miller on or about June 15, 2009, to manage the Madison branch. Ms. Miller is younger than Plaintiff.

Defendant decided to consolidate the operations of the two branches in August of 2009 by closing one of the branches. Defendant purports that the branch physically located in Antioch was closed and the Madison branch continued to do business; however, the Madison branch employees were temporarily physically relocated to occupy the Antioch office space because the lease on the Madison office space was ending. Plaintiff disputes that the Antioch branch was actually closed. At that time, Mr. Cooper informed Plaintiff that her position was being eliminated and that she was being terminated. Plaintiff testified that Mr. Cooper told her

2

Defendant "needed a stronger person." Mr. Cooper testified that Defendant "needed a stronger salesperson that could deliver the results the company needed to experience, especially with the offices being in the condition that they were." He also testified that he believed the most important factor in evaluating a branch manager's performance was how the office was performing, i.e., its sales growth and profitability. Based on these criteria, Mr. Cooper testified that he believed Ms. Miller was a stronger salesperson than Plaintiff. Ms. Miller continued to work as the branch manager of the consolidated branch.

A few days after Plaintiff's position was eliminated, Plaintiff was rehired to work as an assistant manager at Defendant's branch location in Dickson, Tennessee. The Dickson branch closed in September of 2009, and Plaintiff's position was again eliminated. Plaintiff testified that she does not believe the second termination was a result of discrimination.

    *B. Procedural History*

Plaintiff initiated this action against Defendant in the Circuit Court for Davidson County on August 17, 2010, alleging age discrimination in violation of the Tennessee Human Rights Act ("THRA"). (Doc. No. 1-2.) Defendant removed the action to this Court on September 17, 2010, based on the diversity of the parties. (Doc. No. 1.)

Defendant filed a Motion for Summary Judgment on June 16, 2011. (Doc. No. 11.) Defendant simultaneously filed a Memorandum in Support (Doc. No. 12), a Statement of Undisputed Material Facts (Doc. No. 13), and a Declaration (Doc. No. 14). On July 15, 2011, Plaintiff filed a Response to the Motion (Doc. No. 15), a Memorandum (Doc. No. 16), a Response to Defendant's Statement of Undisputed Material Facts (Doc. No. 17), and an additional Statement of Undisputed Facts (Doc. No. 18). Defendant filed a Reply to Plaintiff's

Response (Doc. No. 19) and a Response to Plaintiff's Statement of Undisputed Facts (Doc. No. 20) on July 18, 2011.

## II. STANDARD OF REVIEW

Summary judgment is rendered when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must demonstrate that the non-moving party has failed to establish a necessary element of that party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis of the summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-movant's case. *See Celotex*, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330-31 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). A dispute about a material fact is genuine if a reasonable factfinder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A party asserting or denying that a fact is genuinely disputed may support its position by (1) citing to particular parts of materials in the record, (2) showing that the materials cited by the opposing party do not establish the absence or presence of a genuine dispute, or (3) showing that an adverse party cannot produce admissible

4

evidence to support a fact. Fed. R. Civ. P. 56(c)(1).

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.* If the court determines that a reasonable factfinder could not find for the non-moving party, summary judgment must be granted. *See Lexington-South Elkhorn Water Dist.*, 93 F.3d at 233.

## III. DISCUSSION

### A. Statute of Limitations

As a threshold issue, Defendant argues that Plaintiff's claims under the THRA are barred because she failed to file her Complaint within one year of the alleged unlawful employment action. (Doc. No. 12 at 1.) Claims asserted under the THRA are subject to a one-year statute of limitations. Tenn. Code Ann. § 4-21-311(d). "A discriminatory termination ceases and is complete when a plaintiff is given unequivocal notice of the employer's termination decision, even if employment does not cease until a designated date in the future." *Weber v. Moses*, 938 S.W.2d 387, 391-92 (Tenn. 1996) (citing, *inter alia*, *Webster v. Tenn. Bd. of Regents*, 902 S.W.2d 412 (Tenn. Ct. App. 1995) (holding that the one-year statute of limitations period began to run when a university administrator was given notice that he would be terminated from his employment, rather than the date on which is contract for services ended); *Janikowski v. Bendix Corp.*, 823 F.2d 945, 947 (6th Cir. 1987) (holding that a plaintiff's cause of action accrues when he receives a notice of termination, not when his employment actually ceases)).

Plaintiff filed her Complaint in the Circuit Court for Davidson County on August 17,

5

2010. (Doc. No. 1-2 at 1.) Thus, the notification of her termination must have occurred on or after August 17, 2009, to satisfy the statute of limitations. Plaintiff testified in her deposition that the only discriminatory act she alleges in this litigation is her termination from the position of branch manager of the Antioch branch in August of 2009; she explicitly stated that she "understood" her second termination from the Dickson branch in September of 2009 and did not believe it was discriminatory. (Doc. No. 13-1 at 63-64.) For the purposes of determining the limitations period, then, the relevant date is the date on which Plaintiff was notified of her termination from her position at the Antioch branch.

Defendant offers Plaintiff's deposition testimony in support of its position. Plaintiff testified that Mr. Cooper unequivocally notified her of her immediate termination from the Antioch branch, and that she asked if she could continue her employment until the end of the month "because it was, like, the 15th or 14th or something of August." (Doc. No. 13-1 at 43.) She also testified that Mr. Cooper's phone call offering her the position at the Dickson branch occurred "about three days" after she was "let go" from her position at the Antioch branch. (*Id.* at 34.) Plaintiff then testified that she started working the day after the phone call, and that the paperwork related to her rehire was dated August 19, 2009. (*Id.* at 77.) Defendant argues that Plaintiff was therefore informed of her termination from the Antioch branch no later than August 15, 2009. (Doc. No. 12 at 8.)

Plaintiff argues that her deposition testimony is insufficient proof that she was fired on August 14 or 15 because she was not responding to questions specifically about when the conversations occurred, and "Plaintiff made it clear she was estimating" the dates. (Doc. No. 16 at 1-2.) Plaintiff also offers Mr. Cooper's deposition testimony, in which he answered a question

6

about the meeting "around August 31, 2009," in which he told Plaintiff that her position was being eliminated. (Doc. No. 13-4 at 11.) Plaintiff asserts that by answering the question, Mr. Cooper implicitly acknowledged that the conversation happened in late-August. (Doc. No. 16 at 2.)

The Court finds no clearly defined standard for evaluating a limitations period when there is an undisputed adverse employment action, but there exists a dispute as to when it occurred. Decisions from this District, however, implicitly apply the traditional summary judgment standard. *See Barrett v. Whirlpool Corp.*, 704 F. Supp. 2d 746, 753-54 (M.D. Tenn. 2010) (concluding that no reasonable jury could find that a discriminatory act had occurred within the limitations period based on the plaintiff's deposition testimony); *Hayes v. Automated Components Holdings, LLC*, No. 3:06-cv-00226, 2007 WL 1047650, at *3 (noting that a statute of limitations issue could go to the trier of fact if the plaintiff presented sufficient admissible evidence to defeat summary judgment). The Court finds that here, there is a genuine dispute as to the date on which Plaintiff was notified about her termination. Plaintiff's deposition testimony is not sufficiently conclusive to warrant granting summary judgment to Defendant on such a technicality. Accordingly, the Court will address the merits of Plaintiff's discrimination claims. If the claims proceed to trial, the jury will be required to decide whether the claims are time-barred as a threshold issue.

B. *Age Discrimination Claim*

Age discrimination claims under the THRA are analyzed under the same framework as the Age Discrimination in Employment Act (ADEA), the federal statute upon which it was modeled. *Moore v. Nashville Elec. Power Bd.*, 72 S.W.3d 643, 651 (Tenn. Ct. App. 2001).

Federal law interpreting and applying the ADEA for age discrimination claims is therefore instructive. *Id.* A plaintiff may establish age discrimination by either direct or circumstantial evidence. *Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009) (citing *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008)). Direct evidence is that "'which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Id.* (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)). On the other hand, circumstantial evidence is "proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.*

In order to set forth a prima facie case of age discrimination with circumstantial evidence, a plaintiff must establish: (1) that she was a member of a protected class; (2) that she was discharged; (3) that she was qualified for the position held, and (4) that she was replaced by someone outside of the protected class. *Id.* at 622. If the termination arises as part of a work force reduction, the fourth prong is modified to require "'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Id.* at 623 (quoting *Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir. 1990)). The Sixth Circuit explained:

> A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. A person is considered replaced only when another employee is hired or reassigned to perform the plaintiff's duties. A person is not considered replaced when his duties are absorbed by another person or when the work is redistributed among other existing employees already performing related work.

*Id.* (quoting *Barnes*, 896 F.2d at 1465).

8

Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010) (citing *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008)). If the employer meets this burden, the burden shifts back to the plaintiff to show that the employer's explanation was a pretext for age discrimination. *Id.* "The burden of persuasion, however, remains on the [] plaintiff at all times to demonstrate "'that age was the but-for cause of their employer's adverse action.'" *Id.* (quoting *Geiger*, 579 F.3d at 620).

1. <u>Direct Evidence of Discrimination</u>

Plaintiff asserts that statements made by Mr. Williamson and Mr. Cooper are direct evidence of their discriminatory intent toward her. (Doc. No. 16 at 10.) Ms. Rankin testified in a deposition that both men referred to Plaintiff as an "old maid" and repeatedly made comments about the value of recruiting young girls to be sales representatives. (Doc. No. 18-2 at 12-14, 17, 22-24.) Plaintiff testified that Mr. Williamson told her that "young, pretty white women do better as sales reps." (Doc. No. 13-1 at 76.)

The alleged statements by Mr. Cooper and Mr. Williamson do not constitute direct evidence of discrimination because they do not "require the conclusion" that Plaintiff's age was a factor in their decision to terminate her. *See Geiger*, 579 F.3d at 620. In *Rowan v. Lockheed Martin Energy Systems, Inc.*, the Sixth Circuit held that similar statements, including the age-based slur "old farts," will not amount to direct evidence of discrimination. 360 F.3d 544, 550 (6th Cir. 2004). Although the court found that the comments "may well betray a bias that older workers are less valuable or competent," an inference was required that such bias played a role in

9

the employer's decision to discharge the plaintiff, especially because the plaintiff did not allege that the statements were specifically made in relation to that decision. *Id.* Mr. Cooper and Mr. Williamson's statements, which Plaintiff does not allege were made in relation to the decision to terminate her, can only serve as circumstantial evidence of their discriminatory intent. The Court therefore moves on to the prima facie case based on circumstantial evidence.

2. Circumstantial Evidence of Discrimination

The parties dispute what standard of proof applies to this case. Defendant argues that Plaintiff's position as branch manager of the Antioch branch was eliminated because the branch was shut down, making this a work force reduction case. (Doc. No. 12 at 10.) However, Plaintiff contends that she was replaced by Ms. Miller, a younger employee. (Doc. No. 16 at 10-11.) Plaintiff argues that the modified fourth prong does not, therefore, apply to this case, and that her claim must survive summary judgment because she can establish the elements of the traditional prima facie case. (*Id.*) Consequently, the Court must determine, as a threshold matter, whether Plaintiff was terminated as part of a work force reduction and must therefore meet the heightened fourth prong.

Plaintiff argues that the operations of the Antioch branch were not actually concluded in August of 2009. (*Id.* at 6.) Plaintiff cites the testimony of Mr. Williamson, in which he testified that he thought the Antioch branch was still in operation as of January, 2010 (Doc. No. 18-3 at 8). Terry Stout, the assistant manager of the Madison branch under Ms. Miller, testified that her understanding of the events was that Plaintiff's position was not eliminated. (Doc. No. 18-5 at 9.) Ms. Stout's testimony, however, is impermissible hearsay, as she admitted that it was based solely on what she was told by Ms. Miller. (*Id.*)

10

Plaintiff further asserts that Defendant's financial statements show a separate and distinct accounting from both branches. (Doc. No. 16 at 6.) Plaintiff is correct that the statement titled "Antioch (Nashville), TN Division" shows some sales revenue for September and October of 2009. (Doc. No. 14-1 at 3.) Nonetheless, the revenue for September is negative, and the revenue for October ($141.19) is insignificant compared to that of the preceding months (the lowest of which was $178,804.98). (*Id.*) There are no revenues beginning in November of 2009. (*Id.*) Consequently, the Court does not find the financial statements to be probative evidence that the operations of the original Antioch branch continued in any meaningful way after Defendant claims it was shut down. Most importantly, Plaintiff does not assert or offer any proof that more than one branch manager position existed after Ms. Miller moved to the Antioch location. Rather, Plaintiff's dispute is with Defendant's decision to retain Ms. Miller for the single remaning position and to fire Plaintiff. The combination of two positions into one does not meet the definition of "replacement," thereby removing a case from the work force reduction framework. *Wilson v. Ohio*, 178 F. App'x 457, 465 (6th Cir. 2006). It is undisputed that one branch manager position was eliminated, making this a clear work force reduction case. Consequently, Plaintiff must provide additional direct, circumstantial, or statistical evidence "tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Geiger*, 579 F.3d at 623.

Defendant asserts that none of Plaintiff's proffered reasons for believing that her position was terminated because of her age constitute sufficient additional evidence to satisfy the heightened standard for workforce reduction cases, and therefore Plaintiff cannot establish a prima facie case of age discrimination. (Doc. No. 12 at 11.) Plaintiff offers several pieces of

11

evidence as circumstantial proof that her termination involved discriminatory intent: her "stellar" performance evaluations, Mr. Cooper and Mr. Williamson's comments discussed above, and negative testimony about Ms. Miller's character and job performance. Plaintiff also testified that she believed Mr. Cooper had discriminatory animus toward her because Mr. Cooper told her the company needed a "stronger" manager, which she interpreted to mean "younger," and made comments about her hearing that she interpreted to be critical of her age. (Doc. No. 13-1 at 74, 78-79.)

As an initial matter, the fact that an employer retains a younger person in a position that a plaintiff is qualified to perform does not satisfy the "additional evidence" requirement. *See Schoonmaker*, 595 F.3d at 267; *Reminder v. Roadway Express, Inc.*, 215 F. App'x 481, 483-84 (6th Cir. 2007); *Adams v. Proto Plastics, Inc.*, 151 F. App'x 468, 470 (6th Cir. 2005). Thus, the mere fact that Defendant retained Ms. Miller as a branch manager instead of Plaintiff cannot support Plaintiff's prima facie case of age discrimination. A plaintiff may, however, satisfy the modified fourth prong by showing that she possessed superior qualifications to the younger employee who was retained. *Schoonmaker*, 595 F.3d at 265 (quoting *Barnes*, 896 F.2d at 1466). Plaintiff has failed to proffer objective evidence to create a genuine dispute as to whether she was better qualified than Ms. Miller for the branch manager position. Plaintiff cites only her own opinion of her superiority and deposition testimony by Ms. Stout – who was only an assistant branch manager and not in any way involved in the decision-making process – that Ms. Miller was not a good manager. Plaintiff also cites her written performance evaluation, but the evaluation was completed by Ms. Rankin, who Plaintiff admits was not involved in the decision to terminate her employment. None of this evidence indicates a discriminatory animus toward

12

Plaintiff and does not support an inference that Plaintiff was fired in favor of Ms. Miller because of her age.

The Court also finds that the additional two pieces of evidence from Plaintiff's deposition cannot support an inference of discriminatory intent. Plaintiff's exact testimony regarding Mr. Cooper's comment about needing a stronger manager is as follows:

> Q: What is the basis for your belief that your termination from your position as the branch manager of the Antioch location was based on age discrimination?
>
> A: Because the person that was given my position was younger than I was, had considerably less experience, did not have a good evaluation that I was aware of, did not work 45 to 55 hours a week like I did, and I was told that they needed a stronger person, and I did not certainly feel it could be stronger sales because that hadn't happened up north, either. So I took it to mean younger, stronger.
> . . . .
>
> Q: Ed [Cooper] told you they needed a stronger person, and you concluded from that that meant a stronger, younger person, a physically stronger person?
>
> A: Correct. And as a matter of fact, I even said, "I'm working 45 to 55 hours now. I do everything and more than a lot of people. How could you need someone stronger? What are you saying to me?" And he said, "Dovie, the decision has been made. We need someone stronger in this position." So, yes.

(Doc. No. 13-1 at 64-65, 74.) Mr. Cooper did not mention age in his alleged comments, and there is simply nothing in Plaintiff's testimony to support an inference that by using the word "stronger," Mr. Cooper intended to imply "younger." With respect to Mr. Cooper's jokes about Plaintiff's hearing, Plaintiff admitted later in her deposition that she has an actual hearing problem, that she behaved in ways that would have indicated as such to Mr. Cooper, and that ultimately she told Mr. Cooper about her hearing problem. (*Id.* at 80.) While Mr. Cooper's jokes and comments may have made Plaintiff uncomfortable, she does not allege that he ever connected them to her age or to advanced age generally. None of these alleged statements by

13

Mr. Cooper tend to indicate that Defendant later singled out Plaintiff's position for elimination for discriminatory reasons. *See Geiger*, 579 F.3d at 623.

Finally, the Court finds that other comments by Mr. Cooper and Mr. Williamson, detailed above, do not support an inference of discriminatory intent in their decision to terminate Plaintiff's employment sufficient to defeat summary judgment. Although the comments may in some circumstances indicate the men's preferences for younger employees or their personal animus toward Plaintiff because of her age, there is no evidence tying the comments in any way to their decision to terminate her employment. In fact, it is undisputed that Mr. Cooper and Mr. Williamson were both involved in the decision to hire Plaintiff in September of 2008. "[W]here the same person hires the employee and fires him within a short period of time, especially where the employee's class has not changed, there is a strong contrary inference of discriminatory intent." *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 801 (6th Cir. 2007) (citing *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463-64 (6th Cir. 1995)) (rejecting evidence that an employer was motivated by animus in terminating an employee only two and a half years after the same employer hired the employee). The Court declines to accept Plaintiff's assertion that Mr. Cooper and Mr. Williamson developed a bias against her based on her age less than a year after hiring her, especially in light of the fact that they initially promoted her and almost immediately rehired her to work at the Dickson branch. *See id.* ("It [is] 'incredible . . . that the company officials who hired [an employee] at age fifty-one had suddenly developed an aversion to older people two years later.'" (quoting *Buhrmaster*, 61 F.3d at 463)).

After reviewing the evidence before it, the Court finds that Plaintiff has not met her burden of providing additional direct, circumstantial, or statistical evidence tending to indicate

14

that she was singled out for termination based on her age. Plaintiff has therefore failed to create a genuine dispute as to one of the elements of the prima facie case for age discrimination. Accordingly, the Court **GRANTS** summary judgment in favor of Defendant.

*C. Religious Discrimination*

Plaintiff testified in her deposition that she believes she was terminated because of her age and religion. (Doc. No. 13-1 at 63.) However, Plaintiff's Complaint does not assert a claim that she was terminated based on her religion. The Complaint only alleges that Plaintiff was wrongfully terminated based on her age in violation of the THRA. (Doc. No. 1-2 ¶¶ 9, 11.) The Complaint contains one factual allegation that Plaintiff was ridiculed for her religious affiliation (*id.* at ¶ 9), but does not assert that she was terminated because of that affiliation. Further, the Complaint does not allege that Plaintiff was replaced by someone outside of the protected class of her religion, a necessary element of the prima facie case for religious discrimination. *See Hall v. Baptist Memorial Health Care Corp.*, 215 F.3d 618, 626 (6th Cir. 2000).

To the extent that Plaintiff now claims a violation of the THRA because of religious discrimination, the Court finds that Plaintiff's Complaint has failed to state a claim on which relief can be granted. The claim is therefore subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). In addition, insomuch as a claim for religious discrimination could survive dismissal under Rule 12(b)(6), Plaintiff has failed to meet her burden in opposing summary judgment. Plaintiff does not address the merits of a religious discrimination claim in her Response; rather, Plaintiff focuses solely on the law and merits of her age discrimination claim. (*See* Doc. No. 16 at 9-13.) Accordingly, Plaintiff has failed to delineate specific evidence to show that there is a genuine issue of fact for trial. Because Plaintiff has not adequately opposed

15

Defendant's thorough and well-supported arguments in support of summary judgment, the Court **GRANTS** summary judgment in favor of Defendant on Plaintiff's religious discrimination claim.

IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**.

It is so ORDERED.

Entered this __17th_____ day of October, 2011.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT